UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 20-cr-293-04 |
| VERSUS | JUDGE FOOTE |
| BILLY BRYAN FEROBEN (04) | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

Billy Brian Feroben ("Defendant") is charged with one count of conspiracy to possess with the intent to distribute methamphetamine and one count of possession with intent to distribute methamphetamine. The charges arise of out a search of a residence and vehicles pursuant to a state search warrant. Before the court is Defendant's Motion to Suppress (Doc. 141), which seeks to suppress all evidence seized in the search because (1) the search warrant did not particularly describe the persons or vehicles to the searched; and (2) the Leon good faith exception does not apply. For the following reasons, it is recommended that the motion be denied.[1]

**Relevant Facts**

The search warrant for the residence was applied for and executed by DEA Task Force Officer Robert Chapman. The affidavit in support of the warrant states that agents of the DEA Task Force received information from multiple sources that Defendant and Kenneth Horn ("Horn") were living at the residence at 9423 Francais Drive Shreveport,

---

[1] A hearing is not necessary to address the issues raised by Defendant regarding the warrant.

Louisiana and were distributing methamphetamine from the residence. Some of the sources described a gold or tan Mercury Grand Marquis that supposedly belonged to Defendant. The sources advised the TFO agents that Defendant would obtain methamphetamine and store it in bulk in the Mercury or other vehicles at the residence.

The affidavit also states that, on August 13, 2020, members of the DEA task force conducted surveillance at the residence. They observed a vehicle occupied by two females pull up to the residence. The passenger got out of the vehicle and went into the residence. After a few moments, the passenger returned to the vehicle, which then left the residence.

Deputy J. Roppolo of the Caddo Parish Sheriff's Office conducted a traffic stop of the vehicle. Agent Chapman arrived on the scene and spoke with the passenger, who told Chapman that she had just purchased approximately one gram of methamphetamine from Horn at the residence. She said she contacted Horn on Facebook to set up the purchase. She said that Horn showed her a bag that she estimated to contain about one ounce of methamphetamine that was located inside Horn's bedroom.

Agent Chapman requested the search warrant for 9423 Francais Drive "and the residence's curtilage, vehicle's (sic) and outbuildings." The application also requested that the warrant be issued for the purpose of seizing, among other things, "persons of individuals present at the time of the search warrant execution."

Members of the DEA task force executed the search warrant the day it was issued. Defendant and two other individuals were inside the house. They were detained and advised of their Miranda rights before being searched. Agents found 36.8 grams of methamphetamine inside a plastic container, 31.6 grams of methamphetamine lying on a

bed, boxes of ammunition, mail addressed to Defendant and another individual, and a DVR surveillance system.

A Mercury Grand Marquis and Chevy Impala were parked outside of the residence. Inside the trunk of the Mercury, the agents found 247.4 grams of methamphetamine, a Ruger .22 caliber long rifle with two magazines and bullets, and four digital scales. During a post-Miranda interview, Defendant admitted that all of the drugs found inside the Mercury belonged to him.

**Law and Analysis**

Defendant argues that all of the evidence gathered as a result of the execution of the search warrant should be suppressed because the description in the warrant of persons to be searched was overly broad and not particularized. The Government responds that Defendant was not arrested for anything found on his person or on any other individual. The Government represents that it does not intend to use at trial any evidence found on any person during the execution of the warrant. Therefore, this issue is moot. United States v. Richardson, 2011 WL 825759 *5 (N.D. Tex. 2011).

Defendant also argues that the language in the search warrant allowing for the search of "any and all vehicles" located at the residence is unconstitutionally overbroad. Defendant points out that the agents knew that they were interested in searching the Grand Marquis and referenced that vehicle in the affidavit, but the warrant authorized a general and not particularized search of any vehicle located at the premises.

The Supreme Court held in United States v. Ross, 456 U.S. 798 (1982) that a lawful search of fixed premises extends to every part of the premises in which the object of the

search may be found, despite the fact that separate acts of opening or entry may be required to conduct the search. Id. at 820–21. Building from Ross, the Fifth Circuit has repeatedly held that a warrant authorizing a search of "the premises" includes permission to search vehicles parked on the premises. See, e.g., United States v. Napoli, 530 F.2d 1198, 1200 (5th Cir. 1976) (holding that a warrant for the search of the premises known as 3027 Napoleon Avenue encompassed a vehicle parked in the driveway on those premises); United States v. Alva, 885 F.2d 250 (5th Cir. 1989) (search of pickup truck pursuant to a warrant authorizing the search of any and all motor vehicles found parked on the premises of 223 Burcham was within the scope of the warrant); United States v. Singer, 970 F.2d 1414, 1417–18 (5th Cir. 1992) (rejecting defendant's argument a search warrant for his residence did not encompass two vehicles parked on his property because the search warrant did not specifically describe the vehicles); United States v. Freeman, 685 F.2d 942, 955 (5th Cir. 1982) (holding warrant which authorized a search of "the premises known as 256 Seadrift Road" was sufficiently particular to permit a search of defendant's Jeep parked on the premises off the street and close to the house).

The warrant in this case specifically authorized a search of the residence as well as "the residence's curtilage; including vehicles and outbuildings." Defendant's vehicle was parked in the driveway when the agents executed the warrant. Consequently, under Singer and Freeman, the warrant permitted a search of the vehicle.

Even if the search of the vehicle was somehow invalid under the warrant, the Leon good faith exception to the warrant requirement would apply. Under the good faith exception, if an officer's 'reliance on the magistrate's probable-cause determination and

on the technical sufficiency of the warrant he issues [is] objectively reasonable,' a court need not suppress the fruits of the search.  United States v. Flanders, 468 F.3d 269, 271 n. 2 (5th Cir. 2006) (quoting United States v. Leon, 468 U.S. 897, 922 (1984)).

The good faith exception is inapplicable to the execution of a warrant only in the following "exceptional circumstances": (1) when the magistrate issued it in reliance on a deliberately false affidavit; (2) when the magistrate abandons his or her judicial role and fails to perform in a neutral or detached fashion; (3) when the warrant is based on an affidavit so lacking in indicia of probable cause as to render an officer's belief in it unreasonable; and (4) when the warrant is so facially deficient, as by failing to particularize the place to be searched or the items to be seized, that no reasonable officer could believe it valid.  Leon, 468 F.3d at 923.

Defendant argues that the fourth exceptional circumstance is applicable to this case because the warrant failed to particularly describe Defendant's vehicle.  As explained above, the warrant was not facially deficient because "a warrant issued for 'the premises' includes vehicles parked on the premises."  United States v. Cervantes, 251 F.3d 157, at *1 (5th Cir. 2001) (unpublished) (holding good faith exception applicable).  Thus, the agents relied in good faith on the warrant in searching Defendant's vehicle.

Accordingly,

It is recommended that Defendant's Motion to Suppress (Doc. 141) be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b)(2), parties aggrieved by this recommendation have **fourteen (14) days** from the date of this

report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Crim. P. 45(b). A party may respond to another party's objections within **fourteen (14) days** from the filing of the objections. Counsel are directed to furnish a paper copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendation set forth above shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 25th day of May, 2021.

Mark L. Hornsby
U.S. Magistrate Judge